**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
TARIQ KAREEM AYRES,                :
                                   :   Civil Action No. 09-4247 (FLW)
            Plaintiff,             :
                                   :
      v.                           :
                                   :       **O P I N I O N**
CHARLIE ELLIS, et al.,             :
                                   :
            Defendants.            :
_____:


**Wolfson**, United States District Judge:

    This matter comes before the Court upon submission of a civil complaint ("Complaint") by Tariq Kareem Ayres ("Plaintiff"), addressing the events that allegedly, took place while Plaintiff was a pre-trial detainee confined at the Monmouth County Correctional Facility ("Facility").

    Having thoroughly reviewed Plaintiff's allegations stated in the Complaint and his recently submitted application to proceed in forma pauperis,[1] as required by 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), this Court will grant Plaintiff in forma pauperis status and will dismiss, sua sponte, Plaintiff's Complaint, while allowing Plaintiff to file an amended pleading.

---

[1] Plaintiff initially omitted to submit either his filing fee or his in forma pauperis application but has duly corrected this error. See Docket Entry No. 3 (reflecting receipt of Plaintiff's in forma pauperis form).

I.  **BACKGROUND**

In his Complaint, Plaintiff names two Defendants: (1) Chales Ellis ("Ellis"), the warden of the Facility; and (3) correctional officer Airrigo ("Arrigo").  See Compl. at 4-5.  Although -- as the discussion below illustrates -- Plaintiff's allegations suggest the possibility of Plaintiff's claims against the Facility's medical/nursing personnel, the Complaint does not name any such entity as defendant.

Plaintiff's allegations against Ellis unambiguously clarify that Plaintiff named Ellis as Defendant solely because of Ellis' supervisory position rather than personal involvement in the events alleged.  See Compl. at 5.  Plaintiff's allegations against Airrigo are somewhat cryptic, since they read: "Himself with officer available at the time did not attempt to prevent in a more structural presence to help avoid the damage that was created and are also responsible for the damage."  Id.

The facts alleged by Plaintiff are as follows:

> While being detained at [the Facility as a pre-trial detainee, Plaintiff] was attacked by 3 individuals at B-unit while using a phone for reasons unknown.  There is a gate at the tier that was closed and in the process my jaw was broken and chin strap was permanently broken.  On the date of March 25th [Plaintiff] got his jaw completely wired and inserted a metal plate inside of [Plaintiff's] chin strap.  While being treated by nurses at the [Facility, Plaintiff] got infected by not receiving proper medical treatment.  Overall the environment did not provide [Plaintiff] with enough safety measures to help protect or assure [him] an alertive mechanism that wouls allow [him] better or more supportive protection.

Id. at 7.

The Court presumes that the above-quoted statements were meant to allege: (1) on a certain day, Plaintiff was physically attacked by three other inmates at the Facility; (2) Plaintiff was and still is unaware of the reason for the attack; (3) the attack resulted in serious physical injuries to Plaintiff; (4) during Plaintiff's medical treatment, Plaintiff suffered an infection; (5) Plaintiff believes that the infection was a result of the medical treatment (or lack thereof) he was receiving; (6) Plaintiff also believes that Airrigo failed to take certain unspecified measures to ensure that the attack would not happen; and (7) in addition, Plaintiff belives that Ellis is responsible for the events simply because Ellis is the warden of the Facility.

## II.  **STANDARD FOR SUA SPONTE DISMISSAL**

It is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nonetheless, the Third Circuit has noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. See Burlington Coat Fact. Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). Therefore, legal conclusions draped in the guise of factual allegations may not benefit from the presumption

3

of truthfulness. See Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

Last year, addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the district courts with guidance as to what pleadings are sufficient to pass muster under Rule 8. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' . . . ." Twombly, 127 S. Ct. at 1964-65 . . . ."[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3.
> . . .

Id. at 230-34 (original brackets removed). This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-

4

> alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [,i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations . . . that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn . . . the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint alleges any of the elements] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope to develop facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.[2]

The Third Circuit observed that Iqbal provided the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] which was applied to

---

[2] The Supreme Court's treatment of deducements as to the defendant's "indirect involvement" warrants a separate notice. There, the Supreme Court reversed the trial court and appellate court's decisions, observing that the plaintiff must plead the facts showing that the defendants *actually partook* in the wrongful conduct. See Iqbal, 129 S. Ct. at 1944-48.

[3] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46. Under this "no set of facts"
(continued...)

federal complaints before <u>Twombly</u>.  <u>See</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009).  Since <u>Iqbal</u>, the Third Circuit has required the district courts to conduct, with regard to Rule 8 allegations, the two-part analysis when the district courts are presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [<u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in <u>Iqbal</u>.]  In other words, a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct, the complaint has alleged-but it has not 'show*[*n*]*'-'that the pleader is entitled to relief*.'" <u>Iqbal</u>, [129 S.Ct. at 1949-50 (emphasis supplied)]. This "plausibility" determination will be "a context-specific task that *requires the reviewing court to draw on its judicial experience and common sense*." <u>Id.</u>

<u>Fowler</u>, 578 F.3d at 210-11 (emphasis supplied).

### III.  DISCUSSION

#### A.  <u>Respondeat</u> <u>Superior</u> Claims Against Ellis

It is well established that supervisory liability cannot be imposed under § 1983 on a <u>respondeat</u> <u>superior</u> theory.  <u>See</u> <u>Monell</u>

---

[3](...continued)
standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

6

v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . through [either] personal direction or . . . actual knowledge and acquiescence." Rode, 845 F.2d at 1207; accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Thus, to establish liability, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have

7

the force of law."  Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1977).

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  Natale, 318 F.3d at 584 (footnote, quotation marks and citations omitted).

Here, Plaintiff's claims against Ellis are based solely the theory of respondeat superior.  See Compl. at 5.  Consequently, as drafted, Plaintiff's allegations against Ellis fail to state a claim and will be dismissed.  See Iqbal, 129 S. Ct. at 1944-48 (addressing the issue of respondeat superior liability).

     **B.**   **Due Process Allegations**

Since it appears that Plaintiff was held at the Facility as a pre-trial detainee, the Court examines Plaintiff's allegations under the test applicable to Fourteenth Amendment due process claims. "[T]he Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (citation omitted); see also Bell v. Wolfish, 441 U.S. 520, 544 (1979); City of Revere v. Massachusetts, 463 U.S. 239, 244 (1983), and the Eighth Amendment sets forth the floor for the standard applicable to the claims of pre-trial detainees. See Bell, 441 U.S. at 544. Thus, a failure of prison officials to provide minimally civil conditions of confinement to pre-trial detainees, or deliberate indifference to serious medical needs of such detainees, violates their right not to be punished without due process of law. See Reynolds, 128 F.3d at 173-74; Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 345-46, n.31 (3d Cir. 1987); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825 (1994).

Plaintiff's allegations suggest that Plaintiff was physically attacked not by Airrigo and other correctional officers but by three other inmates,[4] and Plaintiff was merely dissatisfied with

---

[4] Plaintiff's claims against these inmates cannot be brought under Bivens v. Six Unknown Named Agents of the Federal
(continued...)

the security in the Facility. The Court construes Plaintiff's allegations as an attempt to state a failure-to-protect claim.

Under the Eighth Amendment, prison officials have a duty to provide inmates with humane conditions of confinement, including and personal safety.[5] See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). Indeed, "[b]eing violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

However, to state a failure-to-protect claim, the inmate must assert facts showing that he was/is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and, in addition, that prison officials knew of and disregarded the excessive risk to the inmate's safety. See id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to

---

[4](...continued)
Bureau of Narcotics, 403 U.S. 388 (1971), since Plaintiff's allegations suggest that none of these inmates was a state actor.

[5] Here, Plaintiff was a pre-trial detainee, not a prisoner, and thus, the Eighth Amendment analysis provides the floor in determining the standard to be considered with respect to his claims.

a single incident or isolated incidents." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether . . . prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842. Similarly, prison officials' deliberate indifference is more than a mere lack of ordinary due care: it is a state of mind equivalent to a reckless disregard of a known risk of harm. See id. at 834.

Here, Plaintiff does not state a single fact suggesting that Airrigo even knew that there was a risk of Plaintiff being attacked by the three inmates; indeed, Plaintiff himself is still unaware of the reasons for the attack (and, seemingly, even of the identities of these inmates).  Therefore, Plaintiff's allegations cannot plausibly be read as asserting that Arrigo disregarded the risk to Plaintiff's health and safety (since, under Plaintiff's facts, Airrigo was not aware of this risk to begin with). Consequently, Plaintiff's allegations cannot state a claim under Farmer, and will be dismissed.

Finally, Plaintiff's medical claims against the nursing personnel cannot be entertained because: (a) Plaintiff did even not name the nurses that treated him as defendants in this matter; and (b) did not state what particular denial of medical care resulted in the alleged infection (rather, Plaintiff merely offered the

11

Court his self-serving conclusory statement, in violation of Rule 8 pleading requirements, as clarified in Twombly and Iqbal).

**IV.   CONCLUSION**

In view of the foregoing, the Court will grant Plaintiff in forma pauperis status and dismiss the Complaint.  However, Plaintiff will be allowed to cure the deficiencies of his Complaint by filing an amended complaint, that is, in the event Plaintiff believes he can raise allegations complying with the pleading requirements (as explained to him in this Opinion) and stating claim under the substantive tests, as explained herein.

An appropriate order accompanies this Opinion.

s/Freda L. Wolfson
**Freda L. Wolfson**
**United States District Judge**

Dated: November 4, 2009