**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
TARIQ KAREEM AYRES,                :
                                   :  Civil Action No. 09-4247 (FLW)
            Plaintiff,             :
                                   :
      v.                           :
                                   :  **MEMORANDUM OPINION**
CHARLIE ELLIS, et al.,             :
                                   :
            Defendants.            :
_____:


**Wolfson**, District Judge:

   This matter comes before the Court upon Plaintiff's filing a letter addressing his failure to timely submit his amended complaint, and upon his submission of such amended complaint, and it appearing that:

1. On August 19, 2009, Plaintiff submitted for filing his civil complaint; the complaint arrived unaccompanied by Plaintiff's in forma pauperis application.  See Docket Entry No. 1.

2. On September 29, 2009, this Court denied Plaintiff in forma pauperis status; such denial was without prejudice, and Plaintiff was granted thirty days to cure the deficiencies of his in forma pauperis application.  See Docket Entry No. 2.

3. One week later, on October 7, 2009, Plaintiff duly submitted his in forma pauperis application.  See Docket Entry No. 3.

4.  On November 4, 2009, this Court issued an order ("November Order") and accompanying opinion ("November Opinion") granting Plaintiff <u>in</u> <u>forma</u> <u>pauperis</u> status, directing applicable deductions from Plaintiff's prison account statement, and dismissing Plaintiff's complaint. <u>See</u> Docket Entries Nos. 4 and 5.  The Court's dismissal of Plaintiff's complaint was without prejudice, and Plaintiff, again, was granted the same thirty days (from the date of entry of the November Order) to submit his amended complaint. <u>See</u> <u>id.</u>  The instant matter was administratively terminated subject to reopening upon Plaintiff's timely submission of his amended complaint. <u>See</u> Docket Entry No. 5.

5.  Although the deductions related to collection of the filing fee were duly made from Plaintiff's prison account, no amended complaint was received by the Court within the thirty-day period. <u>See</u> <u>generally</u>, Docket.

6.  Many months passed by, and the instant matter remained in administrative termination.  Finally, on June 10, 2010, <u>i.e.</u>, more than eight months after the Court's entry of the November Order and November Opinion dismissing Plaintiff's original complaint and directing filing of his amended pleading, the Clerk received a letter from Plaintiff informing the Court that Plaintiff was "unable to meet the full requirements of properly filing the claim properly." <u>See</u> Docket Entry No. 9,

at 1.  Plaintiff's letter did not elaborate on the reasons causing Plaintiff's aforesaid "inability."  See id.

6. In response to that submission, the Court issued an order expressing the Court's concern with Plaintiff's failure to submit his amended complaint during the thirty-day period allocated for such filing, his failure to submit his amended complaint during the seven-month period following the expiration of the time allotted by the Court for such filing, and with his failure to provide the Court with a clearly articulated explanation as to the grounds for Plaintiff not meeting the deadline.  See Docket Entry No. 10.  However, in light of Plaintiff's pro se litigant status, the Court found it in the interests of justice to allow Plaintiff an opportunity to: (a) articulate the specific reason(s) that prevented Plaintiff from execution of timely filing of his amended complaint; and (b) submit his amended pleading for the Court's examination in the event the Court determines that Plaintiff's delay in filing his amended complaint should be excused.  See id.

7. In response, Plaintiff submitted a letter elaborating on his reasons for the delayed filing and accompanied that letter with his amended complaint.  See Docket Entry No. 12.  Plaintiff's explanatory letter stated that his eight-month delay was a result of Plaintiff's: (a) lack of experience in

      proceeding pro se; (b) limited access to law library and to the single typewriter in the prison during late 2009; (b) a two-week "lock-down" period that took place in the facility where Plaintiff was confined in November 2009; (c) Plaintiff's busy schedule celebrating fall and winter holidays, such as Thanksgiving, Christmas and New Year; and (d) low staffing in Plaintiff's prison facility which, seemingly, unfavorably affected Plaintiff's ability to use the prison law library during the first half of 2010.[1]  See id.

8. Plaintiff's explanations as to his eight-month delay in submitting his amended complaint cause this Court grave concern. However, the Court – in light of the Third Circuit's guidance that the very gravity of a plaintiff's claims might be such that, being factored into judicial analysis, it might

---

[1] Plaintiff also opined that he should be allowed to file his amended complaint regardless of the eight-month delay simply because the filing fee has been collected from Plaintiff's prison account. However, the outcome of this litigation, including dismissal of Plaintiff's claims or substantive or on procedural grounds, cannot impact Plaintiff's obligation to pay the applicable filing fee it its entirety. See Hairston v. Gronolsky, 2009 U.S. App. LEXIS 22770 (3rd Cir. Oct. 15, 2009) (clarifying that, regardless of the litigant's willingness or unwillingness to be assessed the filing fee, the litigant's "legal obligation to pay the filing fee [is automatically] incurred by the initiation of the action itself") (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999), i.e., the seminal decision unambiguously explaining that a litigant's financial obligations associated with initiation of legal actions accrue at the point of commencement of that action due to the operation of the statutory provision governing the filing fee matters, and these legal obligations cannot be affected by the litigant's state of mind or his/her success in prosecuting his/her claims).

4

tilt the scale in favor of entertaining the plaintiff's claims regardless of his/her pattern of litigation, cf. Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984); see also Apodaca v. Uphoff, 1996 U.S. App. LEXIS 16005, at *2 (10th Cir. July 3, 1996), – finds it warranted to screen Plaintiff's amended complaint on merits.

9. The Court begins its discussion to that effect with an overview of the guidance the Court provided to Plaintiff in its November Opinion. Specifically, the November Opinion:

   (a) clarified that Plaintiff raised his challenges with regard to the events that took place while Plaintiff, a federal prisoner, was still a pre-trial detainee;

   (b) noted that Plaintiff named two Defendants: (i) Charles Ellis ("Ellis"), the warden of the facility where Plaintiff was held during that period; and (ii) correctional officer Arrigo ("Arrigo");[2]

---

[2] In its November Opinion, the Court also observed that Plaintiff named Ellis as a Defendant solely because of Ellis' supervisory position. Addressing Plaintiff's allegations against Arrigo, the Court noted that these allegations suggested that: (i) on a certain day, Plaintiff was physically attacked by three other inmates at the facility; (ii) Plaintiff was and remained unaware of the reason for the attack; (iii) the attack resulted in serious physical injuries to Plaintiff; (iv) during Plaintiff's medical treatment, Plaintiff suffered an infection; (v) Plaintiff believed that the infection was a result of the medical treatment (or lack thereof) he was receiving; and (vi) Plaintiff also believed that Arrigo was negligent by failing to ensure that the attack on Plaintiff would not happen. See November Opinion, Docket Entry No. 4.

(c) detailed to Plaintiff the standard of review applicable to screening complaints for sua sponte dismissal;

(d) pointed out that allegations merely based on a defendant's supervisory capacity could not state a viable claim and, hence, Plaintiff's claims against Ellis were subject to dismissal;

(e) explained to Plaintiff that his due process claims against Arrigo were similarly subject to dismissal because – while prison officials must take reasonable measures to protect prisoners from violence at the hands of other prisoners – a viable failure-to-protect claim must be based on the facts showing that the plaintiff was incarcerated under conditions posing a substantial risk of harm to plaintiff and, in addition, that defendants knew of but recklessly disregarded that excessive risk;

(f) stressed that allegations suggesting prison officials' deliberate indifference must be based on facts showing more than a mere lack of ordinary due care;

(g) applied the aforesaid standard to Plaintiff's allegations against Arrigo and explained to Plaintiff that these allegations had to be dismissed for Plaintiff's failure to state facts suggesting, even remotely, that Airrigo knew of the particular risk to Plaintiff of being attacked by these three inmates;

    (h) granted Plaintiff limited leave to file an amended complaint with regard to Plaintiff's medical claims since: (i) Plaintiff did even not name any medical official who treated him - or denied him treatment – as a defendant in this matter; and (ii) Plaintiff did not detail any events allowing the Court to discern what particular denial of medical care occurred in connection with Plaintiff's alleged infection.

See November Opinion, Docket Entry No. 4.[3]

10. Unfortunately, Plaintiff drafted his amended complaint in ignorance of the limited scope of leave granted to him. See Docket Entry No. 12-1. Indeed, the amended complaint neither named any particular medical professional as a new Defendant in this matter nor even elaborated on the facts of Plaintiff's denial-of-medical-care claim. See id. In fact, Plaintiff's amended complaint abandoned that claim in its entirety, i.e., the amended complaint is wholly silent as to that line of allegations. Rather, Plaintiff's amended complaint seeks to re-litigate Plaintiff's claims against Ellis and Arrigo by asserting that: (a) Plaintiff twice asked Ellis to transfer

---

[3] Since the Court's November Opinion included a detailed discussion of the legal sources upon which the Court reached its conclusion, a reiteration of the Court's extensive legal analysis appears unwarranted. Therefore, the detailed content of the Court's November Opinion shall be deemed incorporated by reference in the instant Memorandum Opinion.

    him to another wing of the facility (or to another prison facility) justifying his request to Ellis by Plaintiff's assertion that he was feeling "uncomfortable" in the wing where he was housed; (b) Plaintiff is of the opinion that Ellis could have arranged for such transfer sooner, and a speedier transfer might have spared Plaintiff from being in the situation when Plaintiff was attacked by three other inmates; (c) Arrigo did not follow a certain prison policy that requires closing certain doors (to ensure against theft in cells) and certain gates (to ensure inmate's privacy during the inmate's use of a phone); and (d) Petitioner is of opinion that Arrigo's "lax and passive" performance of his duties was taken advantage of by the three inmates who attacked Plaintiff during the fifteen minutes when Arrigo stepped away. See id.

11. As this Court already extensively detailed to Plaintiff in its November Opinion, allegations of negligence cannot serve as a valid basis for a failure-to-protect claim. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (deliberate indifference is more than a mere lack of ordinary due care). To state a valid claim, the litigant must assert facts demonstrating both the defendant's knowledge of a substantial risk of harm and the defendant's deliberate indifference to that risk. See id. Plaintiff's statement to Ellis that Plaintiff felt "uncomfortable" cannot qualify as placing Ellis on notice

about any specific risk of harm to Plaintiff, same as Arrigo's act of stepping away for fifteen minutes, or Arrigo's failure to close certain doors or gates (i.e., to take the measure aimed to ensure against theft or to guarantee telephone privacy) cannot be construed as plausibly demonstrating either: (a) Arrigo's awareness of the three inmates' intent to attack Plaintiff during the time when Plaintiff would be making a phone call; or (b) Arrigo's deliberate indifference to the risk of that particular harm. In other words, all that Plaintiff keeps reasserting is: (a) Arrigo's negligent performance of his duties; and (b) that prisons might be a dangerous environment ridden with unspecified risks. See, e.g., Wilbert Rideau & Ron Wikberg, Life Sentences: Rage and Survival Behind Bars 74 (1992) ("[A] typical [person] walking into [an] average jail or prison in the nation [naturally experiences fear of, since violence is] as much a part of [the prisoner's] pained existence as the walls holding them prisoner").

12. Since the allegations stated in Plaintiff's amended complaint do not amount to a claim upon which relief can be granted, Plaintiff's failure-to-protect challenges will be re-dismissed. Moreover, since Plaintiff abandoned his denial-of-medical-care challenges by omitting them, entirely, from his amended complaint, Plaintiff's amended complaint will be

9

dismissed with prejudice since granting Plaintiff another opportunity to amend his pleadings appears facially futile. An appropriate Order accompanies this Memorandum Opinion.

                                            /s/ Freda L. Wolfson
                                            **Freda L. Wolfson**
                                            **United States District Judge**

Dated: September 20, 2010